UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PRESTON HOLLOW CAPITAL, LLC, | § § | |
| Plaintiff. | § § | |
| VS. | § | CIVIL ACTION NO. 3:19–CV–00185 |
| MARK C. BOULDIN, ET AL., | § § § | |
| Defendants. | § § | |

**ORDER**

It is well-settled that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*, if necessary. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (A "challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*."); *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, No. 18-11192, 2020 WL 63296, at *3 (5th Cir. Jan. 7, 2020) ("Courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists.") (quotation marks, brackets, and citation omitted)*; Morris v. Wells Fargo Bank*, 677 F. App'x 955, 957 (5th Cir. 2017) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (quotation marks and citation omitted). If a district court determines at any stage of a civil action that it lacks subject matter jurisdiction, it must dismiss the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the

court must dismiss the complaint in its entirety."); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

With these general principles in mind, I *sua sponte* raised the issue of whether this Court has diversity jurisdiction over the claims brought by Preston Hollow Capital, LLC ("Preston Hollow"). I did so because I noticed that several of the parties in this case are limited liability companies, and I am well-aware that the process for unraveling the citizenship status of a limited liability company is somewhat unique and complex. The citizenship of limited liability entities is determined by the citizenship of their members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). When members of a limited liability entity are themselves entities or associations, citizenship must be traced through however many layers of members there are until arriving at the entity that is not a limited liability entity and identifying its citizenship status. *See Mullins v. TestAmerica*, Inc., 564 F.3d 386, 397–98 (5th Cir. 2009).

On January 8, 2020, I entered an order requiring Preston Hollow, as the plaintiff in this action, "to file a letter explaining the citizenship of all parties within seven days." Dkt. 78 at 1. Preston Hollow submitted a letter on January 15, 2020. In that letter, Preston Hollow informed me that it believes that Defendant Senior Care Living VI, LLC ("Senior Care") has three members: Senior Care Ownership 3, Inc. ("Senior Care Ownership 3"), which is a corporation organized under the laws of Florida with its principal place of business in Florida; and two limited liability companies. Preston Hollow represented to me that it is unable to determine the membership of those two limited liability companies.

In its January 15, 2020 letter, Preston Hollow also indicated that it has 66 members, seven of whom are individuals, 28 are partnerships or limited partnerships, 16 are limited liability companies, nine are trusts, three are employee retirement or pension benefit plans, and three are other business organizations. Preston Hollow said that its members prefer not to disclose details of their involvement in Preston Hollow. Importantly, Preston Hollow argued that the citizenship status of its members is not relevant because Preston Hollow is not a real party in interest in this case. Instead, Preston Hollow asserted that it is suing exclusively as an agent of Branch Banking and Trust Company ("BB&T"), the real party in interest. At my request, the parties have submitted several letter briefs addressing the outstanding jurisdictional issues. I have carefully reviewed those submissions and conducted my own legal research on the disputed jurisdictional issues.

## BACKGROUND

To begin my analysis, I need to provide some basic background about this lawsuit. Preston Hollow, an independent municipal finance company, filed this case back in June 2019, seeking to recover millions of dollars from Mark Bouldin ("Bouldin") under a guaranty agreement. Bouldin, a Florida resident, is the President of Senior Care Ownership 3, one of the entities with an ownership interest in Senior Care. The lawsuit alleges that Senior Care borrowed roughly $44 million raised through the sale of tax-exempt bonds to construct senior living facilities. Preston Hollow invested more than $21 million in the financing. Bouldin guaranteed the bond and loan obligations of Senior Care. BB&T was the original indenture trustee with respect to the bonds and the loans relating to the financing. Because BB&T was formed under North Carolina law and has its principal

place of business in North Carolina, BB&T is a citizen of North Carolina for purposes of the diversity jurisdiction analysis.

Because of its large investment, Preston Hollow wanted to make sure that it was "in a position to be able to make decisions and exercise control if things [went] wrong." Dkt. 66 at 75. To accomplish this objective, Preston Hollow negotiated a provision in the Master Trust Indenture, Deed of Trust and Security Agreement ("MTI") allowing Preston Hollow, as a "Noteholder Representative," to act anytime, in its sole discretion, in lieu of the trustee to enforce remedies on behalf of all the bondholders.[1]

When Preston Hollow originally filed this lawsuit, Bouldin was the sole defendant. Preston Hollow contends that diversity jurisdiction is determined at the time a case is filed, and complete diversity exists here because BB&T is a citizen of North Carolina and Bouldin is a citizen of Florida. Although jurisdiction is generally determined at the time the suit is filed, the "addition of a nondiverse party will defeat jurisdiction." *Hensgens v.*

---

[1] The lawsuit alleges that Preston Hollow "is permitted to bring the claims in this suit on behalf of all note holders in the financing pursuant to Section 7.20 of the [MTI]." Dkt. 49 at 4. Section 7.20 provides as follows:

> <u>Actions Taken by Noteholder Representative in Lieu of the Master Trustee.</u> Notwithstanding anything in this Indenture to the contrary, if an Event of Default shall have occurred and be continuing, the Noteholder Representative, in its sole discretion as evidenced by written notice delivered to the Master Trustee, may (but shall not be required to), (i) in lieu of the Master Trustee, exercise such one or more of the rights and powers conferred on the Master Trustee by this Article VII or under any Supplement; and (ii) in lieu of the Master Trustee, exercise such rights and powers granted to Issuer under the Indenture, and such rights of the Holders under this Article VII, either by a suit or suits in equity or in law for the enforcement of any appropriate equitable or legal remedy the Noteholder Representative shall deem most expedient in the interests of the Holders.

Dkt. 53-10 at 81–82.

*Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987). It is, therefore, imperative to be aware of what has transpired since this lawsuit was originally filed. In August 2019, Preston Hollow added Senior Care as a defendant, suing Senior Care for the unpaid loan Bouldin had guaranteed. The live pleading is the Third Amended Complaint, filed on October 15, 2019. In that document, Preston Hollow contends that "Senior Care is liable to [Preston Hollow] for the unpaid amount of all of the" indebtedness, Dkt. 49 at 15, and "Bouldin is liable to [Preston Hollow], individually and on behalf of the noteholders, for the full unpaid indebtedness owed by Senior Care." *Id.* at 16.

Over the past few months, I have become quite familiar with this case. In addition to spending hours reviewing well-written and voluminous submissions, I held multiple oral hearings addressing motions to dismiss and requests to add parties and pursue counterclaims. I also conducted two lengthy evidentiary hearings—one hearing in October 2019 focused on whether it would be appropriate to appoint a receiver; the other hearing in January 2020 sought my permission to sell the senior care living facility operated by the court-appointed receiver.

## THE LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The federal diversity statute provides that the district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of a state and citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a)(2). The diversity statute requires "complete diversity" of citizenship,

meaning that a district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants. *See Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992).

In evaluating citizenship for purposes of determining whether complete diversity exists, I must consider only the citizenship of real and substantial parties to the litigation and not take into account nominal or formal parties that have no real interest in the litigation. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."); *Bynane v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Back Certificates Series 2006-24*, 866 F.3d 351, 356 (5th Cir. 2017) (quoting *Navarro*, 446 U.S. at 461) ("In determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'"); *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (A "federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985) ("In determining diversity jurisdiction, the citizenship of the real parties in interest is determinative, and the citizenship of nominal or formal parties who have no real interest in the dispute before the court may be disregarded, even though they may be required by law or court order to join in the lawsuit.").

## ANALYSIS

The ultimate question I must answer is whether Preston Hollow has a real and substantial interest in this litigation. If Preston Hollow has a real and substantial interest

in this litigation, I must discover the citizenship of each of its members to determine if complete diversity exists.  If, on the other hand, Preston Hollow is, as it alleges, merely bringing this lawsuit in a representative capacity, on behalf of BB&T, then Preston Hollow's citizenship is completely irrelevant to the jurisdictional analysis.

To cut to the chase, I do not accept Preston Hollow's claim that it is merely bringing this lawsuit in a representative capacity on behalf of BB&T.  Tellingly, Preston Hollow is unable to point to any document that gives it the authority to bring a claim on behalf of BB&T, the trustee.  My careful review of the financing documents has uncovered no such provision permitting Preston Hollow to act as an agent or representative of BB&T.  Instead, Section 7.20 of the MTI expressly provides that Preston Hollow has the right to bring a claim "in lieu of" the trustee.  Dkt. 53-10 at 81–82.  Black's Law Dictionary defines "in lieu of" to mean "[i]nstead of or in place of," after which appears the following example: "the creditor took a note in lieu of cash." *In Lieu Of*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Given this common usage of the term "in lieu of," it is clear that Preston Hollow has the right to bring an affirmative claim for relief *instead of* the trustee, not *on behalf* of the trustee.  This is a significant distinction, which ultimately means that Preston Hollow is acting as a representative of the bondholders, not as an agent for the trustee.

Preston Hollow maintains in the Third Amended Complaint that it is suing on behalf of all the bondholders, and there is no question that the MTI gives Preston Hollow legal standing to bring the underlying claims on behalf of the other bondholders.  But that does not mean that I should blissfully ignore the citizenship of Preston Hollow when determining whether diversity jurisdiction exists.

I fully agree with the Defendants that the Second Circuit's opinion *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186 (2d Cir. 2003) is instructive. In that case, the corporate plaintiff, Oscar Gruss & Son, Inc. ("OGSI"), filed suit on behalf of six OGSI employees. *See id.* at 191. OGSI owned 11.53 percent of the warrants that were the subject of the lawsuit while the six OGSI employees owned the remaining 88.47% of the warrants. *See id.* at 190. The employees had given OGSI the authority to commence the litigation and make all decisions relating to the lawsuit. *See id.* at 191. In evaluating subject matter jurisdiction, the court addressed whether it should consider the citizenship of all the financially-interested parties or just OGSI as a representative of the others. *See id.* at 194–95. The Second Circuit held that although OGSI brought the lawsuit in a representative capacity, it possessed a valid stake in the litigation sufficient to be considered a "real and substantial" party for purposes of diversity jurisdiction. *See id.* at 194. As a result, OGSI's citizenship, not the citizenship of the six OGSI employees, determined whether diversity of citizenship existed. *See id.* "[A] crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." *Id.* Where a party "suffer[s] a pecuniary loss and is entitled to a portion of the damages award . . . [it] is not 'a mere conduit' but possesses a valid stake in the litigation sufficient to be considered a 'real and substantial' party for diversity purposes." *Id.* (quoting *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995)).

Although Preston Hollow is unquestionably acting as a representative for all of the bondholders pursuant to the terms of the bond documents, it also maintains a significant

stake in this litigation.  "Preston Hollow is the majority holder of the senior tax-exempt bonds," having invested $21 million into this transaction.  Dkt. 99 at 45.  Needless to say, the size of that investment is not trivial, especially since it represents roughly 80 percent of the tax-exempt bonds purchased in the transaction underlying this lawsuit.  *See* Dkt. 66 at 70.  Far from acting solely in a representative capacity, Preston Hollow has a pecuniary interest in this litigation and fully expects to receive a significant portion of any damage award obtained in this case.

Preston Hollow relies on *U.S. Bank N.A. v. Nesbitt Bellevue Property LLC*, 859 F. Supp. 2d 602 (S.D.N.Y. 2012) to support its assertion that it is not a real party in interest for diversity purposes.  That case is inapposite.  In *Nesbitt*, the district court held that the citizenship of a special servicer acting merely as an agent representing the interests of others, without any pecuniary stake in the case, should not be considered for diversity purposes.  *See id.* at 609.  Preston Hollow's position is notably different from the special servicer in *Nesbitt* since Preston Hollow has a huge financial stake in the litigation apart from its duties as the bondholders' representative.  Accordingly, I find that Preston Hollow is a real and substantial party to the controversy pending before me.

Although Preston Hollow contends that its citizenship is irrelevant for diversity purposes since it is purportedly acting as an agent of BB&T, the trustee, Preston Hollow is forced to admit that the original complaint did not indicate that Preston Hollow was filing suit on BB&T's behalf or under its authority.  I would also note that the Third Amended Complaint, the live pleading before me, also does not indicate that Preston Hollow was filing suit on BB&T's behalf or under its authority.  Preston Hollow argues that this

9

oversight is irrelevant because Federal Rule of Civil Procedure 17 provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3). This argument misses the mark. Rule 17 does not "affect jurisdiction and relates only to the determination of proper parties and the capacity to sue." *Oscar Gruss*, 337 F.3d at 193–94. *See also Navarro*, 446 U.S. at 462 n.9 ("There is a rough symmetry between the real party in interest standard of Rule 17(a) and the rule that diversity depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases.") (internal quotation marks omitted); *Airlines Reporting*, 58 F.3d at 861 n.4 (noting that real and substantial parties to the controversy "should not be confused with the 'real party in interest' standard set forth in Fed. R. Civ. P. 17(a)"); *Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985) ("[A]lthough one serving in a representative capacity is a real party in interest in the sense that the action is properly maintained in his name, . . . a representative [under Rule 17(a)] is not necessarily the real party in interest for the purpose of determining diversity jurisdiction.").

In conclusion, I find that Preston Hollow is a real and substantial party to the controversy pending before me. Preston Hollow is not only a representative of all the bondholders, it is also a real party in interest with its own stake in the litigation. As far as a citizenship is concerned for diversity purposes, all I know right now is that Bouldin is a Florida citizen and Senior Care Ownership 3, one of the members of Senior Care, is also a Florida citizen. Fully understanding the citizenship of each member of Preston Hollow

10

and Senior Care is essential to determine whether diversity jurisdiction exists in this case. To help me address the jurisdictional issues, which are obviously of utmost importance, Senior Care is ordered to file a letter by Friday, January 31, 2020, explaining in detail its citizenship. Preston Hollow has indicated that its 66 members prefer not to disclose details of their involvement in Preston Hollow. While I appreciate this, I believe such information is essential for me to determine whether diversity jurisdiction exists. To this end, I (again) order Preston Hollow to file a letter explaining the citizenship of Preston Hollow's members. Such letter should also be filed by Friday, January 31, 2020.

SIGNED and ENTERED this 30th day of January, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE