United States District Court
Southern District of Texas
**ENTERED**
February 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PRESTON HOLLOW CAPITAL, LLC, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19–CV–00185 |
| | § | |
| MARK C. BOULDIN, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

It is well settled that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*, if necessary. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (A "challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*."); *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, No. 18-11192, 2020 WL 63296, at *3 (5th Cir. Jan. 7, 2020) ("Courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists.") (quotation marks, brackets, and citation omitted); *Morris v. Wells Fargo Bank*, 677 F. App'x 955, 957 (5th Cir. 2017) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (quotation marks and citation omitted). If a district court determines at any stage of a civil action that it lacks subject matter jurisdiction, it must dismiss the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter

jurisdiction, the court must dismiss the complaint in its entirety."); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

With these general principles in mind, I *sua sponte* raised the issue of whether this Court has diversity jurisdiction over the claims brought by Preston Hollow Capital, LLC ("Preston Hollow"). I did so because I noticed that several of the parties in this case are limited liability companies, and I am well-aware that the process for unraveling the citizenship status of a limited liability company is somewhat unique and complex. The citizenship of limited liability entities is determined by the citizenship of their members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). When members of a limited liability entity are themselves entities or associations, citizenship must be traced through however many layers of members there are until arriving at the entity that is not a limited liability entity and identifying its citizenship status. *See Mullins v. TestAmerica*, Inc., 564 F.3d 386, 397–98 (5th Cir. 2009).

I issued an Order on January 30, 2019 (Dkt. 102), setting forth my preliminary thoughts on the jurisdictional issues at play. For the sake of clarity, I withdraw that Order. This Memorandum and Recommendation is substituted in its place and sets forth all the reasons for which I **RECOMMEND** that this case be **DISMISSED** for a lack of subject matter jurisdiction.

## THE PARTIES

The Plaintiff in this case is Preston Hollow. The Defendants are Mark Bouldin ("Bouldin") and Senior Care Living VI, LLC ("Senior Care"). To assist me in addressing

the jurisdictional issues, I requested the parties identify their citizenship. Let me start with the Defendants: Bouldin is a Florida citizen; Senior Care is a limited liability company with three members:

> **Senior Care Ownership 3, Inc.**: This entity is a corporation formed under the laws of the State of Florida that maintains its principal office in Florida. As such, Senior Care Ownership 3, Inc. is a Florida citizen.
>
> **Houston 16, LLC**: This limited liability company consists of 14 members—five of whom are individuals and nine are limited liability companies and partnerships. Once the cascading jurisdictional analysis is conducted, the citizenship of Houston 16, LLC's members for diversity purposes is as follows: Colorado, Florida, Ohio, Kentucky, Tennessee, and Texas.
>
> **Validus Senior Living Holdings, LLC**: All of its members are residents of Florida. Accordingly, Validus Senior Living Holdings, LLC is a Florida citizen for the diversity analysis.

*See* Dkt. 105 at 2–4. Taken together, the citizenship of Senior Care for diversity purposes is: Colorado, Florida, Ohio, Kentucky, Tennessee, and Texas.

Plaintiff Preston Hollow has 66 members, seven of whom are individuals, 28 are partnerships or limited partnerships, 16 are limited liability companies, nine are trusts, three are employee retirement or pension benefit plans, and three are other business organizations. Preston Hollow says that its members prefer not to disclose details of their involvement in Preston Hollow, but readily acknowledges that its members include Texas citizens. *See* Dkt. 108 at 1.

Because Preston Hollow and Senior Care are both considered, in part, Texas citizens for diversity purposes, there appears to be a lack of complete diversity that prevents me from hearing this matter. Not so fast, says Preston Hollow, arguing that the

3

citizenship status of its members is not relevant because Preston Hollow is not a real party in interest in this case. Instead, Preston Hollow asserts that it is suing exclusively as an agent of Branch Banking and Trust Company ("BB&T"), the real party in interest. Because BB&T was formed under North Carolina law and has its principal place of business in North Carolina, BB&T is a citizen of North Carolina for purposes of the diversity jurisdiction analysis. BB&T is completely diverse from the Defendants.

At my request, the parties submitted several letter briefs addressing the jurisdictional issues. *See* Dkts. 87, 92, 98. After I issued my original January 30, 2020 opinion, Preston Hollow filed a Motion for Reconsideration. *See* Dkt. 112.[1] Defendants responded with an opposition brief. *See* Dkt. 114. I have carefully reviewed all these submissions and conducted my own legal research on the disputed jurisdictional issues.

## BACKGROUND

To begin my analysis, I need to provide some basic background about this lawsuit. Preston Hollow, an independent municipal finance company, filed this case back in June 2019, seeking to recover millions of dollars from Bouldin under a guaranty agreement. Bouldin is the President of Senior Care Ownership 3, Inc., one of the entities with an ownership interest in Senior Care. The lawsuit alleges that Senior Care borrowed roughly $44 million raised through the sale of tax-exempt bonds to construct senior living facilities. Preston Hollow invested more than $21 million in the financing. Bouldin

---

[1] Because I have withdrawn my January 30, 2019 Order, Preston Hollow's Motion for Reconsideration is denied as moot.

guaranteed the bond and loan obligations of Senior Care. BB&T was the original indenture trustee with respect to the bonds and the loans relating to the financing.

Because of its large investment, Preston Hollow wanted to make sure that it was "in a position to be able to make decisions and exercise control if things [went] wrong." Dkt. 66 at 75. To accomplish this objective, Preston Hollow negotiated a provision in the Master Trust Indenture, Deed of Trust and Security Agreement ("MTI") allowing Preston Hollow, as a "Noteholder Representative," to act anytime, in its sole discretion, in lieu of the trustee to enforce remedies on behalf of all the bondholders.

The present lawsuit alleges that Preston Hollow "is permitted to bring the claims in this suit on behalf of all note holders in the financing pursuant to Section 7.20 of the [MTI]." Dkt. 49 at 4. Section 7.20 provides as follows:

> <u>Actions Taken by Noteholder Representative in Lieu of the Master Trustee.</u>
> Notwithstanding anything in this Indenture to the contrary, if an Event of Default shall have occurred and be continuing, the Noteholder Representative, in its sole discretion as evidenced by written notice delivered to the Master Trustee, may (but shall not be required to), (i) in lieu of the Master Trustee, exercise such one or more of the rights and powers conferred on the Master Trustee by this Article VII or under any Supplement; and (ii) in lieu of the Master Trustee, exercise such rights and powers granted to Issuer under the Indenture, and such rights of the Holders under this Article VII, either by a suit or suits in equity or in law for the enforcement of any appropriate equitable or legal remedy the Noteholder Representative shall deem most expedient in the interests of the Holders.

Dkt. 53-10 at 81–82.

When Preston Hollow originally filed this lawsuit, Bouldin was the sole defendant. Preston Hollow contends that diversity jurisdiction is determined at the time a case is filed, and complete diversity exists here because BB&T is a citizen of North

5

Carolina and Bouldin is a citizen of Florida. Although jurisdiction is generally determined at the time the suit is filed, the "addition of a nondiverse party will defeat jurisdiction." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987). It is, therefore, imperative to be aware of what has transpired since this lawsuit was originally filed. In August 2019, Preston Hollow added Senior Care as a defendant, suing Senior Care for the unpaid loan Bouldin had guaranteed. The live pleading is the Third Amended Complaint, filed on October 15, 2019. In that document, Preston Hollow contends that "Senior Care is liable to [Preston Hollow] for the unpaid amount of all of the" indebtedness, Dkt. 49 at 15, and "Bouldin is liable to [Preston Hollow], individually and on behalf of the noteholders, for the full unpaid indebtedness owed by Senior Care," *id.* at 16.

Over the past several months, I have become quite familiar with this case. In addition to spending hours reviewing well-written and voluminous submissions, I held multiple oral hearings addressing motions to dismiss and requests to add parties and pursue counterclaims. I also conducted two lengthy evidentiary hearings—one hearing in October 2019 focused on whether it would be appropriate to appoint a receiver; the other hearing in January 2020 sought my permission to sell the senior care living facility operated by the court-appointed receiver.

## THE LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The federal diversity statute provides that the district

6

courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of a state and citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a)(2). The diversity statute requires "complete diversity" of citizenship, meaning that a district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants. *See Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992).

In evaluating citizenship for purposes of determining whether complete diversity exists, I must consider only the citizenship of real and substantial parties to the litigation and not take into account nominal or formal parties that have no real interest in the litigation. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."); *Bynane v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Back Certificates Series 2006-24*, 866 F.3d 351, 356 (5th Cir. 2017) ("In determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'") (quoting *Navarro*, 446 U.S. at 461); *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (A "federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985) ("In determining diversity jurisdiction, the citizenship of the real parties in interest is determinative, and the citizenship of nominal or formal parties who have no real interest in the dispute before the court may be disregarded, even though they may be required by law or court order to join in the lawsuit."). When parties exist that are

"directly and personally concerned in the outcome of the litigation," they must be considered "real parties in interest," as opposed to nominal parties, and analyzed in determining diversity jurisdiction. *La. Ex. Real. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 428 (5th Cir. 2008).

## ANALYSIS

The ultimate question I must answer is whether Preston Hollow has a real and substantial interest in this litigation. If Preston Hollow has a real and substantial interest in this litigation, I must consider its citizenship in determining whether diversity jurisdiction exists. On the other hand, if Preston Hollow is, as it alleges, merely bringing this lawsuit in a representative capacity, on behalf of BB&T, with no real interest in the dispute, then Preston Hollow's citizenship is completely irrelevant to the jurisdictional analysis. The analysis would then focus on BB&T's citizenship (North Carolina), which is completely diverse from the citizenship of the Defendants.

To cut to the chase, I do not accept Preston Hollow's claim that it is merely bringing this lawsuit in a representative capacity on behalf of BB&T. While Preston Hollow points to numerous provisions in the MTI for the proposition that "Senior Care granted the Master Trustee broad authority and rights to take essentially all actions necessary to give effect to the transaction," my careful review of the financing documents has uncovered no provision permitting Preston Hollow to act as an agent or representative of BB&T. Dkt. 112 at 5. Instead, Section 7.20 of the MTI expressly provides that Preston Hollow has the right to bring a claim "in lieu of" the trustee. Dkt. 53-10 at 81–82. Black's Law Dictionary defines "in lieu of" to mean "[i]nstead of or in

8

place of," after which appears the following example: "the creditor took a note in lieu of cash." *In Lieu Of*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Oxford English Dictionary defines "in lieu of" the same. *In Lieu Of*, OXFORD ENGLISH DICTIONARY ONLINE, https://oed.com/view/Entry/108085?redirectedFrom=in+lieu+of+#eid39449933 (last visited February 21, 2020). Given this common usage of the term "in lieu of," it is clear that Preston Hollow has the right to bring an affirmative claim for relief *instead of or in place of* the trustee, not *on behalf* of the trustee. This is a significant distinction, which ultimately means that Preston Hollow is acting as a representative of the bondholders, not as an agent for the trustee. There is no question that the MTI gives Preston Hollow legal standing to act as a "Noteholder Representative" and bring the underlying claims on behalf of the other bondholders. *See* Dkt. 53-10 at 81–82. As a result, I should not blissfully ignore the citizenship of Preston Hollow when determining whether diversity jurisdiction exists.

Bolstering my view is the fact that Preston Hollow, itself, contends in its Third Amended Complaint that it is suing on behalf of all the bondholders, not that it is bringing a claim on behalf of BB&T, the trustee. Until I *sua sponte* raised the jurisdictional issue, Preston Hollow had never once asserted in this case that it was merely acting as the agent for BB&T. To this point, the Third Amended Complaint includes a section describing why Preston Hollow believes diversity jurisdiction exists. Apparently under the mistaken belief that Bouldin and Senior Care were both Florida citizens, Preston Hollow notes: "No member of [Preston Hollow] is a citizen of the State of Florida as no member is a resident of the State of Florida, no member is incorporated

9

under the laws of the State of Florida and no member maintains its principal place offices in the State of Florida." Dkt. 49 at 1. Notably absent from this jurisdictional analysis is any mention, reference, or suggestion that I should look to the citizenship of BB&T, rather than Preston Hollow, to assess whether diversity jurisdiction is proper. To borrow Senior Care's verbiage, Preston Hollow's "*post-hoc* effort to recast its claims as a mere agency in a strained effort to manufacture a basis for jurisdiction stands in contradiction to substantially the entire record in this case." Dkt. 114 at 5.

I fully agree with the Defendants that the Second Circuit's opinion *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186 (2d Cir. 2003) is instructive. In that case, the corporate plaintiff, Oscar Gruss & Son, Inc. ("OGSI"), filed suit on behalf of six OGSI employees. *See id.* at 191. OGSI owned 11.53 percent of the warrants that were the subject of the lawsuit while the six OGSI employees owned the remaining 88.47% of the warrants. *See id.* at 190. The employees had given OGSI the authority to commence the litigation and make all decisions relating to the lawsuit. *See id.* at 191. In evaluating subject matter jurisdiction, the court addressed whether it should consider the citizenship of all the financially interested parties or just OGSI as a representative of the others. *See id.* at 194–95. The Second Circuit held that although OGSI brought the lawsuit in a representative capacity, it possessed a valid stake in the litigation sufficient to be considered a "real and substantial" party for purposes of diversity jurisdiction. *See id.* at 194. As a result, OGSI's citizenship, not the citizenship of the six OGSI employees, determined whether diversity of citizenship existed. *See id.* "[A] crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand,

and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." *Id.* Where a party "suffer[s] a pecuniary loss and is entitled to a portion of the damages award" it "is not 'a mere conduit' but possesses a valid stake in the litigation sufficient to be considered a 'real and substantial' party for diversity purposes." *Id.* (quoting *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995)).

Although Preston Hollow is acting as a representative for all of the bondholders pursuant to the terms of the bond documents, it also maintains a significant stake in this litigation. "Preston Hollow is the majority holder of the senior tax-exempt bonds," having invested $21 million into this transaction. Dkt. 99 at 45. Needless to say, the size of that investment is not trivial, especially since it represents roughly 80 percent of the tax-exempt bonds purchased in the transaction underlying this lawsuit. *See* Dkt. 66 at 70. Far from acting solely in a representative capacity, Preston Hollow has a pecuniary interest in this litigation and fully expects to receive a significant portion of any damage award obtained in this case. This is critical. Even if I completely agree with Preston Hollow's assertion that its authority to act derives solely from the authority of BB&T, the trustee, and not from Preston Hollow's bondholder status, the undisputed fact remains that Preston Hollow "has [its] own stake in the litigation," *Oscar Gruss,* 337 F.3d at 194, and is "directly and personally concerned in the outcome of the litigation," *La. Ex. Real. Caldwell*, 536 F.3d at 428. As a result, Preston Hollow must be considered a real party and its citizenship must be examined to determine whether diversity jurisdiction exists.

Preston Hollow relies on *U.S. Bank N.A. v. Nesbitt Bellevue Property LLC*, 859 F. Supp. 2d 602 (S.D.N.Y. 2012) to support its assertion that it is not a real party in interest for diversity purposes. That case is inapposite. In *Nesbitt*, the district court held that the citizenship of a special servicer acting merely as an agent representing the interests of others, without any pecuniary stake in the case, should not be considered for diversity purposes. *See id.* at 609. Preston Hollow's position is notably different from the special servicer in *Nesbitt* because Preston Hollow has a huge financial stake in the litigation apart from its duties as the bondholders' representative. Accordingly, I find that Preston Hollow is a real and substantial party to the controversy pending before me.

As noted above, no complaint filed in this case—including the live Third Amended Compliant—indicates that Preston Hollow was filing suit on BB&T's behalf or under its authority. Preston Hollow argues that this oversight is irrelevant because Federal Rule of Civil Procedure 17 provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3). This argument misses the mark. Rule 17 does not "affect jurisdiction and relates only to the determination of proper parties and the capacity to sue." *Oscar Gruss*, 337 F.3d at 193–94. *See also Navarro*, 446 U.S. at 462 n.9 ("There is a rough symmetry between the real party in interest standard of Rule 17(a) and the rule that diversity depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases.") (internal quotation marks omitted); *Airlines*

*Reporting*, 58 F.3d at 861 n.4 (noting that real and substantial parties to the controversy "should not be confused with the 'real party in interest' standard set forth in Fed. R. Civ. P. 17(a)"); *Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985) ("[A]lthough one serving in a representative capacity is a real party in interest in the sense that the action is properly maintained in his name, . . . a representative [under Rule 17(a)] is not necessarily the real party in interest for the purpose of determining diversity jurisdiction.").

\*\*\*

To summarize, I find that Preston Hollow is a real and substantial party to the controversy pending before me. It is irrelevant whether Preston Hollow is considered a representative of all the bondholders or merely an agent of the trustee. In either case, Preston Hollow possesses a significant stake in the litigation and, for that reason, should be viewed as a real party in interest. Because Preston Hollow is a real and substantial party, I must consider the citizenship of Preston Hollow for diversity purposes. Preston Hollow is, in part, a Texas citizen for diversity purposes. So is Senior Care, one of the Defendants. There is, therefore, a lack of complete diversity. I must, therefore, recommend that this case be dismissed because the Court does not have subject matter jurisdiction over the controversy.

## CONCLUSION

For the reasons explained above, I **RECOMMEND** that this case be **DISMISSED** for lack of subject matter jurisdiction.

I specifically note that this Memorandum and Recommendation is not a final order. *See United States v. Cooper*, 135 F.3d 960, 962 (5th Cir. 1998) ("[T]he recommendation of a magistrate judge is not a final decision and does not in any way 'dispose of' a party's claims."). The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. Until my Memorandum and Recommendation is accepted by United States District Judge Jeffrey V. Brown, complete and exclusive control and possession of the assisted living facility known as Inspired Living at Missouri City remains with Healthcare Management Partners, LLC and Derek A. Pierce, as the court-appointed receiver.

SIGNED at Galveston, Texas, this 21st day of February, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE